[No. A101749. First Dist., Div. Two. Feb. 3, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
ERVIN PUTNAM, Defendant and Appellant.

## COUNSEL

Francia M. Welker, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Bruce Ortega and Rene A. Chacon, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RUVOLO, J.**—After a jury trial on a petition pursuant to Penal Code section 2970 (section 2970), appellant's commitment as a mentally disordered offender (MDO) was extended. Appellant argues that the jury instructions were constitutionally defective, because they did not expressly require the jury to find that appellant had serious present difficulty controlling his behavior such that he presented a serious and well-founded risk of dangerous conduct. We hold that the jury instructions given in this case were sufficient to pass constitutional muster, and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant's original commitment to Atascadero State Hospital (ASH) as an MDO was previously extended under section 2970 by an order that we affirmed in April 2002. (*People v. Putnam* (Apr. 23, 2002, A094631, A096428) [nonpub. opn.].) On December 18, 2002, the San Francisco District Attorney filed a subsequent petition to continue appellant's involuntary treatment as an MDO to February 8, 2004. A jury trial on the petition was held in January 2003.

At the trial, ASH staff psychiatrist Dr. Lev Iofis testified that appellant had schizoaffective disorder, bipolar type, which Iofis characterized as a severe mental disorder that was not in remission. Iofis based his opinion on information indicating that appellant was delusional, suffered from hallucinations, denied he was guilty of the criminal offense underlying his commitment, had no insight into his medical problems, had requested that his medications be stopped, and had refused to take his medications on several occasions, though not during the preceding year. Iofis further testified that appellant suffers from a mood disturbance that renders him chronically grumpy and irritable; he postures angrily, curses at people, makes inappropriate sexual remarks, and engages in inappropriate sexual behavior.

Iofis also reported that appellant has multiple substance abuse problems, which had continued during his confinement at ASH. Iofis opined that these

problems contributed to appellant's dangerousness and predisposed him to commit violent offenses, and that if not confined and treated, appellant would drink, use drugs, and "decompensate psychiatrically"[1] even if he took his medication.

Iofis testified that appellant had demonstrated aggression during the previous year. Some of the examples that Iofis cited appear to have involved only verbal rather than physical aggression. These included various incidents during May and June 2002, in which appellant was "loud, labile and expansive," yelled profanities, and intruded into an ASH staff member's personal space. On October 16, 2002, appellant reduced a female ASH staff member to tears by harassing her with "hypersexual" comments.

More significantly, on May 30, 2002, after drinking alcohol, appellant not only verbally but also physically assaulted ASH staff members, and then spat at them, as a result of which he was placed in full bed restraints. In addition, on December 9, 2002, appellant shoved an ASH staff member, resulting in injury to the staff member's shoulder.

On the other hand, Iofis acknowledged that appellant had not engaged in any serious physical assaults during the past year, and that at least in the past, ASH staff had reported that he was trying to be cooperative and follow the rules and routines of his ASH unit.

In his defense, appellant presented the testimony of two psychiatric technicians at ASH who worked in his unit. They described appellant as loud and animated, but they had not seen him behave violently or aggressively. One of them reported that appellant got along with his peers and was liked by them, but acknowledged that he had seen appellant under the influence of alcohol while at ASH.

Appellant also testified on his own behalf. He indicated that if released from ASH, he would return to San Francisco, where he had lived since he was 18 years old and had family, and support himself on SSI benefits. He denied being mentally ill, but said that he was taking the medication that his current psychiatrist thought he needed. He averred that if he were released from ASH, he would continue to take any medication that was prescribed for him. He admitted drinking alcohol while at ASH, though he denied using marijuana.

Appellant testified that the May 30, 2002 incident (the one that resulted in his being put in restraints) resulted from a verbal exchange with an ASH staff

---

[1] " 'Decompensate' is psychologists' jargon for a psychotic episode." (*Los Angeles County Dept. of Children etc. Services v. Superior Court* (1998) 63 Cal.App.4th 1299, 1304, fn. 3 [74 Cal.Rptr.2d 618].)

member who had teased him in the past about his appearance. He indicated that the staff member had initiated the assault, and that he had merely defended himself. Appellant described himself as generally trying to walk away from potentially explosive situations, though willing to defend himself if necessary.

The jury found the petition to be true, and the court entered an order extending appellant's MDO commitment. This timely appeal followed.

## DISCUSSION

Appellant presents only one issue for our decision. He contends that the jury instructions given in this case did not comport with what our Supreme Court has described as "the safeguards of personal liberty embodied in the due process guaranty of the federal Constitution, [which] prohibit the involuntary confinement of persons on the basis that they are dangerously disordered without 'proof [that they have] serious difficulty in controlling [their dangerous] behavior.' [Citation.]" (*People v. Williams* (2003) 31 Cal.4th 757, 759 [3 Cal.Rptr.3d 684, 74 P.3d 779] (*Williams*), quoting *Kansas v. Crane* (2002) 534 U.S. 407, 413 [151 L.Ed.2d 856, 122 S.Ct. 867].)

As relevant to the issue raised on this appeal, the trial court instructed the jury as follows: "In this case, the question for your determination is whether [appellant], by reason of a severe mental disorder that is currently not in remission or cannot be kept in remission without treatment, represents a substantial danger of physical harm to others. [¶] The plaintiff has the burden of proving beyond a reasonable doubt [2] that [appellant], Number One, has a severe mental disorder; Number Two, that such severe mental disorder is currently not in remission or cannot be kept in remission without treatment; and, Number Three, by reason of such severe mental disorder, [appellant] represents a substantial danger [of] physical harm to others. [¶] The term 'severe mental disorder' means an illness or disease or condition that substantially impairs the person's thoughts, perception of reality, emotional process, or judgment, or which grossly impairs behavior, or that demonstrates evidence of an acute brain syndrome from which prompt remission in the absence of treatment is unlikely. . . . [¶] The term 'remission' means a finding that the overt signs and symptoms of the severe mental disorder are controlled either by psychotropic medication or psychosocial support."

---

[2] The court later gave the following additional instruction regarding the burden of proof: "[Appellant] is presumed not to be a mentally disordered offender as described in [these] instructions until the contrary is proved. And in case of a reasonable doubt whether he is a mentally disordered offender, he is entitled to a verdict that he is not a mentally disordered offender as described in these instructions." This was followed by the standard definition of "reasonable doubt" from CALJIC No. 2.90.

Later, after repeating these instructions, the court added that, "A person is not in remission if during the past year he has been physically violent, caused property damage, made a threat that caused the threatened individual reasonable fear or refused to follow the treatment plan." Prompted by defense counsel, the court acknowledged that the relevant portion of this last instruction should have read, "Has not been physically violent except in self-defense."

Except for this minor correction, appellant's trial counsel neither objected to the instructions, nor requested additional clarifying instructions. On appeal, appellant contends that the trial court should have supplemented the instructions sua sponte, on the ground that they were constitutionally inadequate in failing to define the phrase "substantial danger of physical harm to others." Appellant argues that, under *Kansas v. Crane, supra*, 534 U.S. 407, the jury should have been told it could only find a substantial danger of physical harm to others if it found that appellant had serious present difficulty in controlling his behavior to refrain from violent conduct, such that he presented a serious and well-founded risk of dangerous conduct. Appellant further argues that by failing to narrow the definition in this manner, the trial court left open the possibility that the jury would sustain the petition based solely on appellant's severe mental disorder, without finding that he was sufficiently dangerous to warrant the extension of his commitment under section 2970.

About a month before appellant filed his opening brief in this case, the California Supreme Court decided *Williams, supra*, 31 Cal.4th 757. In *Williams*, the court upheld a commitment under California's Sexually Violent Predators Act (SVPA; Welf. & Inst. Code, § 6600 et seq.) against a challenge to the adequacy of the jury instructions that was similar to the one appellant makes here, and was likewise based on *Kansas v. Crane, supra*, 534 U.S. 407.

In *Williams, supra*, 31 Cal.4th 757, "[t]he jury was instructed in the language of the SVPA, pursuant to a modified version of CALJIC No. 4.19. This instruction explained that a sexually violent predator is one who, inter alia, 'has a currently diagnosed mental disorder that makes him a danger to the health and safety of others in that it is likely that he will engage in sexually violent criminal behavior,' and that a ' "[d]iagnosed mental disorder"

includes a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others.' " (*Id.* at p. 763.) The defendant in *Williams* "requested, and was refused, an additional instruction that 'the diagnosed mental disorder must render the person *unable to control* his dangerous behavior.' " (*Ibid.*, italics added by *Williams*.)

On appeal, the defendant argued that the instruction he had requested was required by *Kansas v. Crane, supra,* 534 U.S. 407. Our Supreme Court disagreed, reasoning that the SVPA's definitions of "sexually violent predator" and "diagnosed mental disorder," which were tracked by the language of the instructions given, necessarily encompass a determination of serious difficulty in controlling one's criminal sexual violence. (*Williams, supra,* 31 Cal.4th at pp. 774, 777.) Specifically, "the SVPA requires a diagnosed mental disorder affecting the person's emotional or volitional capacity that predisposes the person to commit sex crimes . . . . [Citation.]" (*Id.* at p. 776, italics omitted.) "[T]his requirement alone implies 'serious difficulty' in controlling behavior, as required by *Kansas v. Crane*." (*Ibid.*)

In short, the *Williams* court reasoned that a mental disorder meeting the statutory criteria of the SVPA "must additionally produce an actual risk of violent reoffense" that is sufficiently substantial, serious, and well-founded to pass constitutional muster under prior case law. (*Williams, supra,* 31 Cal.4th at p. 776, citing *People v. Roberge* (2003) 29 Cal.4th 979, 988 [129 Cal.Rptr.2d 861, 62 P.3d 97] (*Roberge*) and *People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th 888, 921, fn. 12 [119 Cal.Rptr.2d 1, 44 P.3d 949].) Thus, because jurors instructed using the language of the SVPA must necessarily understand that the defendant has a seriously impaired capacity or ability to control violent criminal sexual conduct, no additional instructions are needed. (*Williams, supra,* 31 Cal.4th at pp. 776–777.)

 The SVPA is, of course, a different statutory scheme from the MDO statutes under which appellant's commitment was extended. Nonetheless, in our view, the same rationale adopted by our Supreme Court in *Williams* also forecloses the argument appellant makes here.[3] In the MDO context,

---

[3] The *Williams* court stressed that "in this nuanced area, the *Legislature* is the primary arbiter of how the necessary mental-disorder component of its civil commitment scheme shall be defined and described. [Citations.] No reason appears to interfere with that legislative prerogative here." (*Williams, supra,* 31 Cal.4th at p. 774, italics in original.) This concern applies equally to the statutory scheme governing MDO commitments.

just as in the SVPA context, instructing the jury with the applicable statutory language adequately informs the jury of the kind and degree of risk it must find to be present in order to extend an MDO commitment. The instructions here informed the jury that in order to find that appellant had a severe mental disorder, it had to find that he had "an illness or disease or condition that substantially impair[ed] [his] thoughts, perception of reality, emotional process, or judgment, or which grossly impair[ed] [his] behavior." Moreover, in order to find that the disorder was not in remission, the jury had to find that "the overt signs and symptoms of the severe mental disorder" were not under control. Finally, the jury was instructed that it had to find that "*by reason* of such severe mental disorder, [appellant] represents a *substantial* danger [of] physical harm to others." (Italics added.)

Given these instructions, taken as a whole, we conclude beyond a reasonable doubt (see *People v. Hurtado* (2002) 28 Cal.4th 1179, 1190–1194 [124 Cal.Rptr.2d 186, 52 P.3d 116]) that the jury could not have sustained the section 2970 petition in this case without having found that, as a result of appellant's mental disorder, he suffered from a seriously and substantially impaired capacity to control his behavior, and that, for this reason, he represented a substantial danger of physical harm to others.[4] In other words, the instructions given here, which tracked the language of the MDO statute, necessarily encompassed a determination that appellant had serious difficulty in controlling his violent criminal behavior, and thus, as in *Williams*, separate instructions on that issue were not constitutionally required. (See *Williams*, *supra*, 31 Cal.4th at p. 777.)

Moreover, in this case, unlike in *Williams*, appellant's trial counsel did not object to the instructions as given, and did not request additional instructions. Appellant argues that this omission does not impair his ability to argue the issue, because the trial court had a duty to give further instructions sua sponte.

"The rules governing a trial court's obligation to give jury instructions without request by either party are well established. 'Even in the absence of a request, a trial court must instruct on general principles of law that are . . . necessary to the jury's understanding of the case.' [Citations.] That obligation comes into play when a statutory term 'does not have a plain, unambiguous meaning,' has a 'particular and restricted meaning' [citation], or has a

---

[4] The record contains substantial evidence supporting such a finding, and appellant does not argue otherwise.

technical meaning peculiar to the law or an area of law [citation]." (*Roberge, supra,* 29 Cal.4th at p. 988.) In *Roberge,* the court held that because the term "likely," as used in the SVPA,[5] has been construed to have a narrower meaning than the range of definitions given in the dictionary, the trial court in an SVPA commitment proceeding has an obligation to instruct the jury sua sponte that "likely" under the SVPA means "poses a substantial danger, that is, a serious and well-founded risk."[6] (*Ibid.*)

In *Williams,* however, the court distinguished *Roberge* on this point, noting that "the 'mental disorder' prong of the SVPA—at issue here pursuant to *Kansas v. Crane, supra,* 534 U.S. 407—is distinct from the prong addressing the *degree of future dangerousness,* which was before us in *Roberge, supra* [citations]." (*Williams, supra,* 31 Cal.4th at p. 776, italics in original.) The *Williams* court did not find the other terms used in the SVPA—those relating to the mental disorder issue—to suffer from the same need for clarification as the term "likely."

■ By the same token, we find *Roberge* (and the other cases cited by appellant) distinguishable here as well. The MDO statutes, unlike the SVPA, do not use the term "likely" in delineating the degree of future dangerousness required to extend an MDO commitment. Rather, they use the expression "substantial danger of physical harm to others." (See, e.g., Pen. Code, §§ 2962, subd. (d)(1), 2970.) Unlike the term "likely," the expression "substantial danger of physical harm to others" is not susceptible to an interpretation that would permit a jury to find a person to be an MDO if that person did not meet the constitutional criteria for civil commitment as defined in *Kansas v. Crane, supra,* 534 U.S. 407.

■ In short, the trial court was not obligated to give additional instructions sua sponte requiring that the jury find appellant to be unable to control his violent behavior. We do not reach the issue whether such instructions might be appropriately given if requested (see *Williams, supra,* 31 Cal.4th at pp. 778–780 (conc. opn. of Kennard, J.)), but we do hold that they were not required by due process, and that they were not mandated in the absence of any request.

---

[5] The SVPA defines "sexually violent predator" to mean "a person who has been convicted of a sexually violent offense against two or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is *likely* that he or she will engage in sexually violent criminal behavior." (Welf. & Inst. Code, § 6600, subd. (a)(1), italics added.

[6] The court concluded, however, that in the case before it, the failure to give such an instruction was harmless beyond a reasonable doubt. (*Roberge, supra,* 29 Cal.4th at p. 989.)

## DISPOSITION

The order extending appellant's MDO commitment until February 8, 2004, is affirmed.

Kline, P. J., and Haerle, J., concurred.

On March 3, 2004, the opinion was modified to read as printed above.