Filed 8/29/14  P. v. Swaim CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>SARAH SWAIM,<br><br>        Defendant and Appellant. | A139612<br><br>(Alameda County<br>Super. Ct. No. RM06293509) |

Sarah Swaim appeals from an order recommitting her to outpatient treatment as a mentally disordered offender (MDO).  (Pen. Code,[1] § 2972, subds. (c), (e).)  Defendant contends the evidence presented at her bench trial was insufficient to support her recommitment.  She argues there was inadequate evidence she has a severe mental disorder according to the MDO statutory definition and there was no evidence she tried and had serious difficulty controlling her physically dangerous behavior.  We disagree and affirm.

## I.  BACKGROUND

In 2002, defendant was convicted of assault under section 245.  Upon her release from prison in 2004, defendant was admitted to Patton State Hospital as an MDO.  In 2006, she was transferred to outpatient treatment with the Conditional Release Program (CONREP).

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

On June 13, 2013, the Alameda County District Attorney's Office filed a petition for continued outpatient treatment and supervision of defendant. (§ 2970.) Defendant's previous commitment was scheduled to terminate on August 3, 2013, after extension by stipulation. Defendant waived her right to a jury trial and a bench trial ensued.

At the trial, defendant's CONREP report, dated May 24, 2013, was entered into evidence. According to the report, defendant has a history of severe mental disorder and psychiatric symptoms dating back to her teens that is not in remission. She began receiving treatment for her disorder at the age of 14, and since then has undergone multiple psychiatric hospitalizations, both while incarcerated and while in the community. Defendant has been diagnosed with paranoid-type schizophrenia, amphetamine abuse, cannabis abuse, and personality disorder with antisocial, narcissistic, and dependent traits. She also has a history of noncompliance with community outpatient treatment and has historically been resistant to taking her medication.

According to the report, defendant has an extensive history of violence and unprovoked assaults in the community, while incarcerated, and at Patton State Hospital. Defendant's assaults are often directed toward women, and include at least two stabbings. Defendant stabbed the victim of her committing offense after the victim knocked a juice cup out of defendant's hands. At the time, defendant was sitting in the victim's car without permission and drinking out of the victim's son's cup. Defendant blames the victims of her assaults, downplays the significance of her crimes, and repeatedly denies involvement in hostile incidents. While she has improved, she continues to have outbursts toward peers, including her own fiancé.

According to the CONREP report, defendant was involved in two hostile incidents within the year prior to her recommitment trial. On October 5, 2012, defendant engaged in a verbal outburst toward a male resident at her former group home when he asked for a cigarette. In January 2013, defendant threatened a resident at her current group home when he made noises in the morning waking defendant up.

Defendant's treating psychiatrist, Dr. Neal Edwards, testified at the trial. In his opinion, defendant suffers from a diagnosed mental disorder. Her primary diagnosed

2

disorder is chronic paranoid schizophrenia.  She also exhibits antisocial and narcissistic traits that are part of her diagnosis.  Dr. Edwards testified paranoid schizophrenia is a condition that affects perception of reality.  Symptoms include paranoid delusion, visual and auditory hallucinations, isolation, social withdrawal, impaired thought processes, impulsivity, violence, and aggression.

Dr. Edwards testified defendant has historically exhibited paranoid delusions where she responds to internal stimuli such as voices in her head.  She also has delusions of others reading her mind, laughing at her, and sexually harassing her.  Defendant has also exhibited assaultive and aggressive behavior, social withdrawal, and poor insight and judgment.  Defendant presently continues to exhibit symptoms of paranoid schizophrenia, including paranoia, isolation, and a lack of insight into her illness.  Dr. Edwards provided several examples of defendant's paranoid delusions within the year before the trial.  For example, when sitting in a doctor's office where other patients were waiting and talking to each other, defendant felt the other patients were making negative statements purposefully directed at her.  Defendant believes people are purposely " 'aggressive towards [her]' " and claims past assaults were messages sent to get people to back off of her.  While defendant is sometimes able to question her paranoid thinking and not react violently, she continues to believe others are purposefully antagonizing her and denies these thoughts are paranoia.

Dr. Edwards also testified defendant has a history of unprovoked violence associated with her paranoid schizophrenia.  While incarcerated defendant stabbed another person five times with a pencil, resulting in a transfer to Patton State Hospital, where she broke a different individual's nose.  In Dr. Edwards's opinion, defendant's delusions result in a desire to attack others before they attack her.

Dr. Edwards testified defendant is prescribed a number of medications to treat her various conditions.  Although she exhibits medication-seeking behavior, making requests for many addictive medications, she simultaneously believes she does not need to take her medications.  In October 2012, Dr. Edwards discovered defendant had not been taking a prescribed medication for three months.  Dr. Edwards opined if defendant is not

3

under CONREP supervision, she would quickly stop taking her medication, would not show up to medical appointments, and would decompensate.

In Dr. Edwards's opinion, defendant is presently a risk to the community as a result of her paranoid schizophrenia. He testified that even with the support of the CONREP program she still exhibited aggressive, hostile, and violent behavior. Dr. Edwards believes if defendant is removed from the CONREP program she would pose a much greater risk to the community and would present a risk of physical harm to others as a result of her mental disorders.

Patrick Hudack, defendant's CONREP case manager therapist for the last five years, also testified. Hudack is responsible for monitoring defendant's compliance with the supervision requirements of CONREP. At the time of the trial, defendant was at an intermediate level of supervision. She was previously on an intensive level of supervision following an assault on a female resident at one of her group homes. The reduction from intensive to intermediate was not a result of defendant's good behavior, and was instead made to assist defendant in complying with the requirements by reducing the number of mandatory appointments she was required to attend. Even with a reduced number of appointments, defendant has difficulty attending or staying for the entire appointment. However, in the three months before trial, defendant's attendance at required group meetings improved.

Beginning in January 2013, defendant was also less resistant to discussing her paranoia during treatment. On January 26, Hudack gave defendant homework assignments, an anger log and thought record, as part of her treatment. Defendant completed the assignments for four months until June 3, when she abruptly decided to stop. Despite defendant's efforts, she remains "the least compliant" person Hudack has ever seen.

At the conclusion of the trial, the court found defendant suffers from a severe mental disorder that is not in remission and by reason of the severe mental disorder defendant represents a substantial danger of physical harm to others. The court found

4

defendant is amenable to outpatient treatment and ordered she remain on outpatient status in a suitable facility for the statutory period of one year.

Defendant timely filed a notice of appeal on August 27, 2013.

## II. DISCUSSION

### A. *Applicable Law*

Appellate review of MDO proceedings is governed by the substantial evidence standard. (*People v. Pace* (1994) 27 Cal.App.4th 795, 797.) Under this standard, the appellate court reviews the entire record to determine whether a rational trier of fact could have found defendant is an MDO beyond a reasonable doubt, considering all evidence in the light most favorable to the People, and drawing all inferences the trier of fact could reasonably have drawn to support the finding. (*People v. Clark* (2000) 82 Cal.App.4th 1072, 1082.) " 'Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder.' " (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206, quoting *People v. Jones* (1990) 51 Cal.3d 294, 314.)

The Mentally Disordered Offender Act requires offenders who have been convicted of violent crimes related to their mental disorders, and who continue to pose a danger to society, to receive mental health treatment until their mental disorder can be kept in remission. (§ 2960; *In re Qawi* (2004) 32 Cal.4th 1, 9.) Commitment as an MDO is not indefinite; instead, an MDO is committed for one-year periods. (*Lopez v. Superior Court* (2010) 50 Cal.4th 1055, 1063, disapproved on other grounds in *People v. Harrison* (2013) 57 Cal.4th 1121.) Section 2972, subdivision (c) provides a patient may be recommitted for one year if the court finds the patient (1) has a severe mental disorder; (2) the severe mental disorder is not in remission or cannot be kept in remission without treatment; and (3) by reason of the severe mental disorder, the patient represents a substantial danger of physical harm to others. (§ 2972, subd. (c).)

5

**B. *Due Process***

Due process "prohibit[s] the involuntary confinement of persons on the basis that they are dangerously disordered without 'proof [that they have] serious difficulty in controlling [their dangerous] behavior.' " (*People v. Williams* (2003) 31 Cal.4th 757, 759 (*Williams*), quoting *Kansas v. Crane* (2002) 534 U.S. 407, 413 (*Crane*).) Proof of a serious difficulty in controlling dangerous behavior distinguishes dangerous offenders subject to civil commitment from other dangerous persons more properly dealt with exclusively through criminal proceedings. (*In re Howard N.* (2005) 35 Cal.4th 117, 129 (*Howard N.*), relying on *Crane*, at pp. 412–413.) The distinction is necessary "lest 'civil commitment' become a 'mechanism for retribution or general deterrence'—functions properly those of criminal law . . . ." (*Howard N.*, at p. 129, quoting *Crane,* at p. 412.)

In *Williams*, our Supreme Court applied the due process standard to the Sexually Violent Predator Act (SVPA). (Welf. & Inst. Code, § 6600 et seq.; *Williams, supra*, 31 Cal.4th at p. 777.) The defendant in *Williams* argued his commitment was invalid because the statutory language of the SVPA did not specifically require proof of a mental disorder that causes serious difficulty in controlling behavior. (*Williams,* at p. 764.) Our Supreme Court rejected this argument, finding "a commitment rendered under the plain language of the SVPA *necessarily encompasses a determination of serious difficulty controlling one's criminal sexual violence*." (*Id*. at p. 777, italics added.) The SVPA "inherently *embraces and conveys* the need for a dangerous mental condition characterized by impairment of behavioral control. . . . by defining a sexually violent predator to include the requirement of a diagnosed mental disorder (§ 6600, subd. (a)(1)) affecting the emotional or volitional capacity (*id.,* subd. (c))." (*Id*. at p. 774.)

In *People v. Putnam* (2004) 115 Cal.App.4th 575 (*Putnam*), Division Two of this court extended the *Williams* rationale to the MDO civil commitment scheme. The court found the jury instructions tracked the language of the MDO statute, and thus adequately informed the jury of the kind and degree of risk it must find in order to extend an MDO commitment. (*Putnam*, at p. 582.) Tracking the MDO definition of "severe mental disorder" in section 2962, subdivision (a), the jury was instructed that in order to find

6

Putnam suffered from a severe mental disorder it had to find he had " 'an illness or disease or condition that substantially impair[ed] [his] thoughts, perception of reality, emotional process, or judgment, or which grossly impair[ed] [his] behavior.' " (*Putnam,* at p. 582.) The jury was further instructed it had to find the overt signs and symptoms of the disorder were not in remission, and that by reason of such severe mental disorder, Putnam represented a substantial danger of physical harm to others. (*Ibid.*) The *Putnam* court reasoned that a finding of each of these statutory elements "necessarily encompassed a determination that [Putnam] had serious difficulty in controlling his violent behavior, and thus, as in *Williams*, separate instructions on that issue were not constitutionally required." (*Ibid.*)

**C.** *Contentions and Analysis*

Defendant acknowledges *Putnam*'s holding that jury instructions tracking the language of the MDO statute necessarily encompass a finding of serious difficulty controlling dangerous behavior. (*Putnam*, *supra*, 115 Cal.App.4th at p. 582.) She thus accepts that in the case of a bench trial, direct evidence of serious difficulty controlling dangerous behavior is not required, but maintains there must still be substantial evidence the patient has a severe mental disorder according to the MDO statutory definition. Defendant contends in this case there was no evidence her mental illness or condition "substantially impairs [her] thought, perception of reality, emotional process, or judgment; or . . . grossly impairs [her] behavior . . . or . . . demonstrates evidence of an acute brain syndrome for which prompt remission, in the absence of treatment, is unlikely," as the statutory definition requires. (§ 2962, subd. (a)(2).) Further, she contends there was no evidence she tried to control her physically dangerous behavior toward others and had serious difficulty doing so.

We disagree. Dr. Edwards testified, consistent with defendant's medical history that she suffers from chronic paranoid schizophrenia. Dr. Edwards's testimony established paranoid schizophrenia is a severe mental disorder as defined by the MDO statute. He testified it is a condition of perception that impairs thought processes, emotional processes, and judgment. It affects behavior by causing impulsivity, violence,

7

and aggression. Dr. Edwards stated defendant *presently* exhibits symptoms of paranoid schizophrenia including delusions, isolation, violence, aggression, paranoia, and a lack of insight into her illness. He offered numerous examples of instances in which her distorted perception of reality, delusionary thinking, and auditory hallucinations caused her to engage in assaultive or threatening behavior. He opined she is presently a risk to the community as a result of her mental disorder, and she would present a much greater risk to the community and of physical harm to others by reason of her mental disorders if she was released from the CONREP program. The CONREP report confirmed defendant's mental disorder is severe, has resulted in an extensive history of unprovoked assaults both in the community and while confined, and is not in remission.

Dr. Edwards's testimony and the CONREP report thus constitute substantial evidence supporting each finding constitutionally required to support extension of defendant's treatment and supervision: (1) she has a mental disorder that "substantially impairs [her] thought, perception of reality, emotional process, or judgment" for purposes of section 2962, subdivision (a)(2); (2) the disorder is not in remission; and (3) by reason of her disorder she represents a substantial danger of physical harm to others. (§ 2962, subd. (a).) No more was required.

Even assuming for the sake of argument the law requires separate evidence—over and above proof of the MDO statutory elements—that defendant tried to control her physically dangerous behavior and encountered serious difficulty doing so, the evidence also supports such a finding. Dr. Edwards testified defendant can sometimes question her paranoid thinking and not react violently. Nevertheless, the record shows that despite defendant's efforts and even with supervision and treatment, she continues to engage in assaultive behavior. While incarcerated, she used a sharpened pencil to stab her victim five times in the head. While under CONREP supervision, she attacked a female roommate. In the year before trial, defendant's attendance at required meetings improved and she completed several therapy assignments. Nonetheless, she engaged in a verbal outburst toward a resident at her former group home when he asked for a cigarette, and in a separate incident, threatened a resident at her current home when he made noises in the

morning. The CONREP report noted that while defendant has improved, she continued to have outbursts toward peers, including her own fiancé. Thus, despite continuous supervision and treatment since her committing offense in 2002, she has been involved in multiple violent incidents, assaults, and outbursts, including within the year before the recommitment hearing. A trier of fact could reasonably infer from the evidence that defendant tried to control her physically dangerous behavior and encountered serious difficulty doing so.

Defendant additionally contends, in reliance on *In re Anthony C.* (2006) 138 Cal.App.4th 1493 (*Anthony C.*), that Dr. Edwards's failure to prepare a formal risk assessment is significant. In *Anthony C.*, however, the court described several factors leading to its decision to discount the expert's opinion as conjecture in addition to the expert's failure to prepare a formal risk assessment, including the expert's "lack of preparation, . . . his inability to state the risk factors at trial, [and] his reluctance to quantify how high a risk Anthony posed without further study." (*Id.* at p. 1507.) Here, Dr. Edwards was willing to testify regarding defendant's risk to the community. He stated: "I do believe she is a risk to the community. If she got off the CONREP program she would be a much greater risk." Dr. Edwards also testified regarding defendant's risk factors. He acknowledged: "She doesn't believe she needs to take her medication. . . . She's very paranoid, guarded, delusional." He assessed that if defendant was not under CONREP supervision, she would quickly stop taking her medication, would not show up to medical appointments, and would decompensate. Dr. Edwards also particularized the risk defendant would present if released. He judged defendant's "potential for violence" if released to be "pretty high." In contrast to the testimony at issue in *Anthony C.*, we find Dr. Edwards's testimony was not tentative, equivocal, conjectural, or lacking in foundation. It was reasonable in nature, credible, and of solid value. (*People v. Johnson* (1980) 26 Cal.3d 557, 576.)

Here, substantial evidence supports each of the requisite statutory elements necessary to support defendant's recommitment to outpatient treatment. Together, the statutory elements necessarily encompass a showing defendant continues to have serious

difficulty controlling her assaultive behavior.  Defendant's challenge to the sufficiency of the evidence fails.

## III.  DISPOSITION

The judgment is affirmed.


_____
Margulies, Acting P.J.


We concur:


_____
Dondero, J.


_____
Banke, J.