Filed 7/7/21  P. v. Radtke CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GERALD CHARLES RADTKE,<br><br>    Defendant and Appellant. | 2d Crim. No. B308828<br>(Super. Ct. No. 20PT-00441)<br>(San Luis Obispo County) |

Gerald Charles Radtke appeals from an order extending his commitment as a mentally disordered offender (MDO).  (Pen. Code,[1] § 2970.)  He contends the commitment order must be reversed because there was insufficient evidence he had serious difficulty controlling his dangerous behavior.  We affirm.

---

[1] Further unspecified statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL HISTORY

Radtke was convicted of assault with force likely to cause great bodily injury (§ 245, subd. (a)(4)). In 2017, he was committed to Atascadero State Hospital for involuntary treatment as an MDO (§ 2962). The involuntary treatment was scheduled to expire in September 2020.

In June 2020, the district attorney petitioned to recommit Radtke as an MDO. (§ 2970.) At a court trial, Dr. Kavita Chowdhary, a psychologist at Atascadero State Hospital, opined that Radtke suffers from schizoaffective disorder, bipolar type. She based her opinion on her observations, an interview with Radtke, consultation with his treating physicians, his medical records, the probation report, a police report, and the prior MDO evaluations.

Dr. Chowdhary testified that Radtke has a "long history of mental health treatment" "over the last few decades," including treatment in the state hospital and California Department of Corrections systems. He has two prior MDO findings (§ 2962). Radtke exhibits "symptoms of auditory hallucinations, persecutory delusions, paranoia, disorganization and poor self care, irritability, [and] aggression." He also suffers mood lability (mood changes) and psychomotor agitation (periods of restlessness causing pacing and aggressive behavior).

Radtke had two strokes in 2014 and 2016 which severely impaired his speech and cognitive abilities. The treatment providers reported it was more difficult to treat Radtke after his strokes, and he was not compliant with taking medication. He "continues to remain paranoid, irritable, but he's become harder to treat with the fragility."

2

Dr. Chowdhary opined that Radtke's disorder is not in remission. She testified that he shows "overt signs and symptoms of his disorder, [which are] not controlled by [his treatment]." He told Dr. Chowdhary that he suffers from paranoia. His treatment providers noted that he sits in the corner of a room to watch people because of his paranoia. He also becomes "easily irritated." Dr. Chowdary said that his symptoms "continue to be present."

Dr. Chowdhary opined that Radtke could not be kept in remission without treatment. Her opinion was based on his issues with medication compliance. Radtke would "cheek" his medication or refuse to take his medication. Because of this, Radtke is subject to an involuntary medication order until September 2021.

Dr. Chowdhary mentioned "some incidents of aggression" due to his refusal to take his medication. He had one incident in September 2019 and three in January 2020. During one incident, he lunged and hit a staff member. He had to be stabilized against a wall and placed in restraints. Two weeks later, he lunged at another staff member, struggled when staff members tried to stabilize him, and was placed in full bed restraints. She also mentioned incidents of aggression that occurred when staff tried to help him shower or change his clothes.

Dr. Chowdhary opined that Radtke poses a "substantial risk of physical harm to others because of his mental illness." She based her opinion on Radtke's "long history of psychotic symptoms, particularly paranoia, irritability and aggression" and "several incidents of aggression in the past that involve . . . medication compliance." She explained that Radtke's

refusal to take his medication is due to his paranoid belief that the treatment staff is trying to poison him. Radtke's treatment compliance issues have been "longstanding" and "continue to affect his ability to remain safe in the future." Dr. Chowdhary stated that his "long history of aggression which [is] ongoing" "indicates that it's likely to continue."

Dr. Chowdhary said that Radtke has "some insight into his symptoms but limited ability to really understand and monitor his paranoia and behaviors that are affected by that." She noted that "he has several cognitive limitations so there are certain aspects that he does not show, he's not able to indicate by speaking what his insight into his illness is or how he can manage it. He also does not have any discharge plans" due to his limitations.

On cross-examination, defense counsel asked Dr. Chowdhary if the fact that Radtke "didn't throw more than one punch at a time show that he has actually has some degree of control over his behavior? In other words, he's not volitionally impaired, would you agree?" Dr. Chowdhary answered: "He's not volitionally impaired, but he [does] not have enough control. He had to be contained right away by staff members."

At the conclusion of the court trial, the court granted the petition and ordered him to undergo continued treatment as an MDO for one year (until September 15, 2021). (§ 2972.)

## DISCUSSION

Radtke contends the trial court erred when it granted the section 2970 petition because the evidence was insufficient to support a finding that he had serious difficulty controlling his dangerous behavior. We disagree.

4

The MDO Act (§ 2960 et seq.), "'requires that offenders who have been convicted of violent crimes related to their mental disorders, and who continue to pose a danger to society, receive mental health treatment . . . until their mental disorder can be kept in remission.'" (*Lopez v. Superior Court* (2010) 50 Cal.4th 1055, 1061, disapproved on another point in *People v. Harrison* (2013) 57 Cal.4th 1211, 1230, fn. 2.)

Pursuant to section 2970, the district attorney may petition to recommit a person as an MDO for an additional one-year term. The person will be recommitted if the trier of fact finds beyond a reasonable doubt that (1) the patient has a severe mental disorder; (2) the disorder "is not in remission or cannot be kept in remission without treatment"; and (3) by reason of that disorder, the patient represents a substantial danger of physical harm to others. (§ 2972; *People v. Burroughs* (2005) 131 Cal.App.4th 1401, 1404.)

Moreover, federal due process "prohibit[s] the involuntary confinement of persons on the basis that they are dangerously disordered without 'proof [that they have] serious difficulty in controlling [their dangerous] behavior.'" (*People v. Williams* (2003) 31 Cal.4th 757, 759 (*Williams*), citing to *Kansas v. Crane* (2002) 534 U.S. 407, 413; *People v. Putnam* (2004) 115 Cal.App.4th 575, 579 (*Putnam*).) There is "'no requirement of *total* or *complete* lack of control.' [Citation.]." (*Williams*, *supra*, 31 Cal.4th at p. 771.) "[T]he impairment [to behavioral control] need only be serious, not absolute." (*Id*. at p. 773.)

We review the trial court's findings for substantial evidence. (*People v. Clark* (2000) 82 Cal.App.4th 1072, 1082.) We consider all the evidence in the light most favorable to the

5

prevailing party and draw all inferences the trier of fact could reasonably have made to support the findings.  (*Ibid*.)

The trial court's findings on the statutory elements for the MDO commitment "necessarily encompass[] a determination that [Radtke] had serious difficulty in controlling his violent criminal behavior."  (*Putnam, supra*, 115 Cal.App.4th at p. 582.)  In *Putnam*, the appellant challenged his MDO recommitment on the ground that the jury instruction was constitutionally defective because it did not expressly require the jury to find that he had serious difficulty in controlling his dangerous behavior.  (*Id*. at p. 579.)  The trial court had instructed the jury of the statutory elements as follows:  "[I]n order to find that appellant had a severe mental disorder, it had to find that he had 'an illness or disease or condition that substantially impair[ed] [his] thoughts, perception of reality, emotional process, or judgment, or which grossly impair[ed] [his] behavior.'"  (*Id*. at p. 582.)  "[I]n order to find that the disorder was not in remission, the jury had to find that 'the overt signs and symptoms of the severe mental disorder' were not under control."  (*Ibid*.)  And the jury "had to find that '*by reason* of such severe mental disorder, [appellant] represents a *substantial* danger [of] physical harm to others.'"  (*Ibid*.)  The court held there was no instructional error because the instructions, "which tracked the language of the MDO statute," necessarily required the jury to find that "as a result of appellant's mental disorder, he suffered from a seriously and substantially impaired capacity to control his behavior, and that, for this reason, he represented a substantial danger of physical harm to others."  (*Ibid*.)

We agree with *Putnam, supra*, 115 Cal.App.4th at p. 582, that the trial court's findings on the statutory elements

for an MDO recommitment necessarily encompass a determination that Radtke had serious difficulty controlling his dangerous behaviors. Radtke exhibited "overt signs and symptoms of his disorder, [which are] not controlled by [his treatment]." These symptoms included irritability, aggression, and paranoia. He had several instances of aggression toward treatment staff members within the prior year. In two instances, he lunged at or hit staff members and had to be placed in restraints. Based on his "long" and "ongoing" history of aggression, Dr. Chowdhary opined that his aggressive behavior is "likely to continue."

Radtke argues that based on Dr. Chowdhary's one statement that he was not "volitionally impaired," the evidence is insufficient to support the MDO finding. But, Dr. Chowdhary's statement was in response to defense counsel's question regarding the recent incidents of aggression. And, she specified that Radtke "[does] not have enough control," and that "[h]e had to be contained right away by staff members" during those incidents. Her statement regarding his volitional impairment does not eliminate the substantial evidence of his "serious difficulty" in controlling his dangerous behavior.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


                                        TANGEMAN, J.


We concur:


GILBERT, P. J.        YEGAN, J.


7

Roger T. Picquet, Judge

Superior Court County of San Luis Obispo

_____


       Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

       Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.